UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

PA VANG,

               Plaintiff,

    v.

ANDREW SAUL, Commissioner of Social Security,

               Defendant.

No. 1:19-cv-01740-GSA

**ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT COMMISSIONER OF SOCIAL SECURITY AND AGAINST PLAINTIFF**

**(Doc. 22)**

## I.    **Introduction**

Plaintiff Pa Vang ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for supplemental security income pursuant to Title XVI of the Social Security Act. The matter is before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1] *See* Docs. 19, 22, 25. After reviewing the record the Court finds that substantial evidence and applicable law support the ALJ's decision. Plaintiff's appeal is therefore denied.

## II.    **Procedural Background**

On May 24, 2016 Plaintiff applied for supplemental security income alleging disability as of April 8, 2011 due to depression, mental problems, headaches, head pain, dizziness, neck pain, pain throughout her back, pain throughout the right side of her body, chest pain, and ulcer pain. AR 153–60, 172. The Commissioner denied the application initially on August 26, 2016 and on reconsideration on November 23, 2016. AR 78–81; 85–89.

Plaintiff requested a hearing which was held before an Administrative Law Judge (the

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. *See* Docs. 6 and 8.

"ALJ") on August 29, 2018.  AR 37–52.  Plaintiff was represented by counsel at the hearing and testified with the aid of a Hmong interpreter.  AR 38.  On November 26, 2018 the ALJ issued a decision denying Plaintiff's application.  AR 22–31.  The Appeals Council denied review on August 6, 2019.  AR 6–11.  On December 13, 2019 Plaintiff filed a complaint in this Court.  Doc. 1.

### III.    Factual Background

#### A.    Plaintiff's Testimony

Plaintiff lived in a single-story house with her husband and eight children ranging from age six to eighteen.  AR 43.  She attended no school and spoke no English.  AR 44.  She was able to cook for her children, get them dressed and ready for school and clean up around the house.  AR 44.  She could do light work around the house for no longer than five minutes and carry nothing heavier than a gallon of milk.  AR 45.  Most of the day she lied down or sat.  AR 45.  Her cholesterol medication made her drowsy for a couple of hours.  AR 45.  She saw her doctor once a month, or once every three months.  AR 45.  She had back pain and her S1 was particularly bad which is why she could not work.  AR 46.  Her back-pain medication provided only temporary relief.  AR 46. Her back pain radiated to her upper back, middle back, and down to her leg.  AR 46.  Her depression medication helped sometimes.  AR 46.  She had not been referred to a psychologist or therapist.  AR 47.  She was seeing a chiropractor until 2016 but she stopped due to lack of insurance coverage.  AR 47.

#### B.    Vocational Expert

Plaintiff had no past relevant work.  The ALJ questioned the VE regarding a hypothetical individual with Plaintiff's vocational profile who could perform work at the medium exertional level with some postural limitations, some environmental limitations, a limitation to non-complex routine tasks and no ability to speak English.  AR 49–50.  The VE testified such an individual could perform jobs existing in significant numbers in the national economy, namely: kitchen helper, scrap sorter and hand packager.  AR 49–50.  If the individual would have two unscheduled absences per month due to her impairments, no work would be available.  AR 50.  The VE testified that none of her answers conflicted with the DOT.  AR 50.

## C. Medical Records

Plaintiff was involved in a car accident on February 3, 2015 after which she reported pain in her neck, mid-back, low back and chest. AR 252. Lumbar spine x-ray showed mild discogenic spondylosis at L3-L4 and L5-S1. AR 244. Plaintiff visited Dr. Cha on March 17, 2015, who noted mild cervical loss of lordosis; tenderness to the nuchal line, traps, supraspinatus, infraspinatus, deltoids, rhomboids, left fourth rib and sternum; mild lumbar scoliosis; loss of lumbar lordosis; tenderness over paraspinal and PSIS; and tenderness over piriformis and ITB. AR 255–56. Dr. Cha diagnosed cervical sprain and strain, spondylosis with cervical headaches and underlying rhomboid strain, chest wall contusion, lumbar sprain and lumbar strain. AR 256. Plaintiff began visiting a chiropractor. AR 241, 259–65, 270–74. In May 2015 Plaintiff reported substantial improvement with minimal residual pain in her low back. AR 297, 246–47, 249.

Plaintiff visited FNP-C Lee at Mountain Family Health Center on July 21, 2015 who noted back tenderness, positive straight leg raise (less than 30 degrees) and flat affect. AR 331. FNP-C Lee assessed lumbago, asthma, depressive disorder, insomnia, vitamin deficiency and mixed hyperlipidemia. AR 331–32. FNP-C Lee prescribed Zoloft and Vistaril for depression and anxiety. AR 332. August 10, 2015 examination notes documented thoracic and spine tenderness. AR 329. Plaintiff was prescribed Ibuprofen 800 and Baclofen. AR 329–30. On September 7, 2016 Plaintiff's Zoloft and Vistaril dosages were increased due to lack of improvement. AR 327–28.

Plaintiff followed up at Mountain Family Health in June 2016 for depression, back pain and asthma. AR 342. Objective findings noted wheezing, her medications were refilled and she was prescribed a corticosteroid. AR 342. After another car accident in October 2016, Plaintiff returned to her chiropractor with pain in her spine and left shoulder. AR 400–05. In December 2016 Plaintiff reported her pain had improved. AR 377. Plaintiff treated with FNP-C Lee in March 2018 for acute onset cough, back pain and depression. AR 375. FNP-C Lee diagnosed acute bronchitis, prescribed an antibiotic and refilled Plaintiff's prescriptions. AR 375–76.

## D. Medical Opinions and Administrative Findings

Plaintiff's treating physician, Dr. Gursahani, completed medical source statements (MSS) in January and February 2017 regarding Plaintiff's mental and physical residual functional

capacity. AR 360–74. Dr. Gursahani diagnosed depression, anxiety, insomnia, hyperlipidemia, headache, lumbago, asthma, and allergies. AR 360. She noted a fair prognosis. AR 360. She noted various side effects of medication including nausea, drowsiness, restlessness, heartburn and headache. AR 360. She rated Plaintiff's mental abilities in 20 work related areas under the categories of understanding and memory, concentration and memory, social interaction and adaptation. She noted substantial work preclusive limitations in all categories. AR 360–61. On a scale ranging from category I (no performance preclusion) to category IV (precludes performance for 15% or more of an 8-hour work day), she rated Plaintiff's mental functionality as a category III or category IV for all 20 abilities. She opined that Plaintiff would miss 5 or more days of work per month due to her impairments. AR 362. She completed a second nearly identical mental MSS. AR 368.

As to Plaintiff's physical condition, Dr. Gursahani identified clinical findings of limited range of motion, tender joints, depressed mood, neurologic abnormalities including positive straight leg raise seated and supine. AR 371. She opined Plaintiff could walk 2 consecutive blocks, sit and stand 30-45 consecutive minutes, sit for 4 hours in an 8-hour day, stand/walk for 2 hours in an 8-hour day, would need to shift positions at will from sitting/standing/walking, would need to walk for 10 minutes every 90 minutes, and would need unscheduled breaks every 1 to 2 hours due to muscle weakness, pain/paresthesias, numbness, chronic fatigue and adverse effects of medication. AR 372. She opined that Plaintiff could rarely lift less than 10 pounds, rarely lift 10 pounds, never lift more than 10 pounds, never climb stairs, rarely perform other postural activities, perform reaching/handling/fingering 25% of the day with both hands, would be incapable of even low stress work due to worsening anxiety, would be off task 25% of the day, would have good days and bad days, and would miss more than 4 days of work per month. AR 374. She completed a second nearly identical physical MSS opinion. AR 363.

Dr. Murphy performed a consultative psychological examination on January 12, 2016 in connection with a prior application for benefits, with the aid of a Hmong intepreter. AR 336–340. Plaintiff reported anger, depression, difficulty sleeping, shortness of breath and physical pain. AR 337. She could not identify the current or former presidents; her intelligence was considered less

4

than adequate; she was unable to recite ten digits forward or backward; she could not spell the word "world"; her fund of knowledge, concentration and abstract reasoning were poor; she could not perform basic calculations without difficulty; she could not multiply 8 times 5 or subtract 70 from 100; she could not explain the difference between an apple and an orange, or interpret a simple proverb; her judgment was less than adequate. AR 338–39. Dr. Murphy opined that Plaintiff would require assistance in handling her finances. AR 340.

Plaintiff underwent a second consultative psychiatric examination in July 2016 which was performed by psychologist Mary Lewis. Plaintiff's mood was euthymic, she was oriented times three but she was unable to perform simple calculations. Dr. Lewis assessed no mental diagnosis and concluded that Plaintiff had no functional impairments. AR 358–59.

Plaintiff underwent a consultative physical examination with Dr. Wagner on July 13, 2016. AR 347–51. Her lungs were clear to auscultation with normal excursions, range of motion testing was within normal limits, straight leg raising was negative both seated and supine, cranial nerves II through XII were grossly intact with normal sensation, reflex, muscle strength, and tone. Her gait was normal. She was diagnosed with neck pain, thoracolumbar back pain, and asthma. Dr. Wagner opined that Plaintiff was able to lift and carry 50 pounds occasionally and 25 pounds frequently, and that she could stand, sit and walk without limitation. AR 351. He identified some postural and environmental limitations. AR 351.

Non-examining state agency consultants A. Garcia, M.D., and E. Murillo, M.D., reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively, concerning her mental RFC. Both opined that Plaintiff's mental impairments were non-severe. AR 56–58, 69–71. Non-examining state agency physicians Kim Rowlands, M.D., and A. Nasrabadi, M.D., reviewed Plaintiff's medical file at the initial and reconsideration levels, respectively, concerning her physical conditions. Both concluded that Plaintiff could perform a range of medium exertional work. AR 56–61, 69–74.

## IV. Standard of Review, Generally

Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

Commissioner denying a claimant disability benefits. "This court may set aside the Commissioner's denial of disability insurance benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted). Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla, but less than a preponderance. *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation omitted). When performing this analysis, the court must "consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks omitted).

If the evidence could reasonably support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "[T]he court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## V. **The Disability Standard**

To qualify for benefits under the Social Security Act, a plaintiff must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if . . . his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §1382c(a)(3)(B).

6

To achieve uniformity in the decision-making process, the Commissioner has established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 416.920(a)-(f). The ALJ proceeds through the steps and stops upon reaching a dispositive finding that the claimant is or is not disabled. 20 C.F.R. §§ 416.927, 416.929.

Specifically, the ALJ is required to determine: (1) whether a claimant engaged in substantial gainful activity during the period of alleged disability, (2) whether the claimant had medically determinable "severe impairments," (3) whether these impairments meet or are medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs existing in significant numbers at the national and regional level. 20 C.F.R. § 416.920(a)-(f). While the Plaintiff bears the burden of proof at steps one through four, the burden shifts to the commissioner at step five to prove that Plaintiff can perform other work in the national economy, given her RFC, age, education and work experience. *Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014).

## VI.    The ALJ's Decision

At step one the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date of May 24, 2016. AR 24. At step two the ALJ found that Plaintiff had the following severe impairments: mild spondylosis of the lumbar spine, mild right thoracic convexity, obesity, and depressive disorder. AR 24. The ALJ found that Plaintiff's asthma was non-severe. AR 24. At step three the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 24. Prior to step four the ALJ evaluated Plaintiff's residual functional capacity (RFC) and concluded that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. 404.1567(c), with some postural and environmental limitations as well as a limitation to non-complex, routine tasks. AR 25. At step four the ALJ found that Plaintiff had no past relevant work. AR 29. At step five the ALJ found that Plaintiff could perform jobs existing in significant numbers in the national economy, namely: kitchen helper, scrap sorter and hand packager. AR 31. Accordingly, the ALJ found that Plaintiff had not been under a disability since

her application date of May 24, 2016.  AR 31.

## VII.   Issues Presented

Plaintiff alleges three errors in the ALJ's analysis.  First, Plaintiff contends the ALJ failed to offer sufficient reasoning for rejecting the opinions of her treating physician, Dr. Gurshani.  Second, Plaintiff contends the ALJ failed to provide sufficient reasons for rejecting Plaintiff's subjective symptomology.  Finally, Plaintiff contends that the ALJ erred in failing to identify and resolve a discrepancy between the VE's testimony and the Dictionary of Occupational Titles.

### A.   Rejecting Dr. Gurshanai's Opinions

#### 1.   Applicable Law

Before proceeding to step four, the ALJ must first determine the claimant's residual functional capacity.  *Nowden v. Berryhill*, No. EDCV 17-00584-JEM, 2018 WL 1155971, at *2 (C.D. Cal. Mar. 2, 2018).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all of the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96–8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner.  See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC).  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so, the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039–40 (9th Cir. 1995).

"In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record such as medical records, lay evidence and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment."  *Robbins*, 466 F.3d at 883.  *See also* 20 C.F.R. § 404.1545(a)(3) (residual functional capacity determined based on all relevant medical and other evidence).  "The ALJ can meet this burden by setting out a detailed and thorough

summary of the facts and conflicting evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (quoting *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

For applications filed before March 27, 2017, the regulations provide that more weight is generally given to the opinion of treating physicians, which are given controlling weight when well supported by clinical evidence and not inconsistent with other substantial evidence. 20 C.F.R. § 404.1527(c)(2); *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996) (noting that the opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in residual functional capacity determinations). An ALJ may reject an uncontradicted opinion of a treating or examining physician only for "clear and convincing" reasons. *Lester*, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining physician may be rejected for "specific and legitimate" reasons. *Id.* at 830. In either case, the opinions of a treating or examining physician are "not necessarily conclusive as to either the physical condition or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Regardless of source, all medical opinions that are not given controlling weight are evaluated using the following factors: examining relationship, treatment relationship, supportability, consistency, and specialization. 20 C.F.R. § 404.1527(c). The opinion of a non-examining physician (such as a state agency physician) may constitute substantial evidence when it is "consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

### 2. Analysis

Plaintiff's treating physician, Dr. Gursahani, opined that Plaintiff's physical conditions caused limitations that would preclude even sedentary work, to wit: rarely lift less than 10 pounds; take 15-20 minute unscheduled breaks every 1-2 hours; use her hands/fingers/arms only 25% of a workday; and miss more than 4 workdays per month (among other limitations). AR 371–73. Dr. Gursahani also opined that Plaintiff's mental conditions caused work preclusive limitations in essentially all functional categories including understanding, memory, concentration, social interaction and adaptation. AR 368–70.

Dr. Gurshani's physical MSS opinion was contradicted by the opinions of the consultative physical examiner and the non-examining physicians, all of whom opined that Plaintiff could perform a range of medium exertional work. AR 56–61; 69–74; 351. Dr. Gursahani's mental MSS opinion was contradicted by the consultative psychiatric examiner (as to the current application), and the non-examining psychiatric consultants, all of whom opined that Plaintiff had no severe mental impairments. AR 56–58; 69–71; 358–59. The ALJ was therefore required to provide specific and legitimate reasons for rejecting Dr. Gursahani's opinion. *Lester*, 81 F.3d at 831.

The ALJ addressed Dr. Gursahani's physical and mental MSS opinions separately. As to the physical MSS, the ALJ noted as follows:

> General practice physician Pushpa Gursahani, MD, from Mountain Family Health Care, completed a Physical Medical Source Statement form in February 2017 . . . A second, nearly identical Physical Medical Source Statement form was filled out in January 2018 (Exhibit 11F).

> Imaging showed only very mild back problems (Exhibits 1F, pp. 7-9). The records from the clinic fail to reveal the type of significant clinical and laboratory abnormalities one would expect if the claimant were in fact disabled. There were no clinical findings in support of manipulative restrictions. Consequently, little weight is accorded these two opinions.

AR 26–27.

As to Dr. Gursahani's mental MSS, the ALJ noted as follows:

> General practice physician Pushpa Gursahani, MD, from Mountain Family Health Care, completed a Mental Residual Functional Capacity Questionnaire form in February 2017 . . . The doctor filled out a second Mental Residual Functional Capacity Questionnaire form in January 2018, which was largely the same as the initial form (Exhibit 10F).

> Little weight is given to these opinions. Dr. Gursahani is a general practitioner, and not a mental health specialist, and is not qualified to assess her psychiatric symptoms. Furthermore, upon reviewing the records from Mountain Family Health Care, it appears all of the claimant's visits were with a family nurse practitioner, rather than Dr. Gursahani, suggesting his [sic] opinion is based upon a review of the records, rather than his personal observations (Exhibits 3F, SF, 12F). In addition, the treatment record does not support this level of limitation.

AR 28.

As to Dr. Gursahani's physical MSS, the ALJ appropriately noted that it was not substantiated by medical evidence. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (noting that lack of corroboration in medical evidence is a valid reason for an ALJ to reject a treating physician's opinion.). The ALJ noted that imaging showed only mild back problems. Indeed, the imaging studies cited by the ALJ revealed the following findings after her first car accident: unremarkable cervical spine study; mild right thoracic convexity but otherwise negative, unremarkable, and adequate findings in the thoracic spine; negative for acute osseous pathology in the lumbar spine, mild discogenic spondylosis, and postural alterations. AR 242–44. The ALJ also noted (albeit in her factual summary) that "By January 2016, she was no longer reporting back pain, and she was not prescribed medication for this condition." AR 26 (citing AR 327–28). Plaintiff does not specifically take issue with these observations, but generally cites evidence she believes supports Dr. Gurshani's opinion. If the evidence could reasonably support two conclusions, however, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).

As to Dr. Gursahani's physical MSS, the ALJ appropriately noted that Dr. Gursahani did not explain the clinical findings or objective signs supporting manipulative limitations. *See* 20 C.F.R. § 416.927(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."); *Thomas v. Barnhart*, 278 F.3d 948, 957 (9th Cir. 2002) ("The ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings").

As to Dr. Gursahani's mental MSS, the ALJ noted that "all of the claimant's visits were with a family nurse practitioner, rather than Dr. Gursahani, suggesting his opinion is based upon a review of the records, rather than his personal observations." AR 28. Plaintiff cites *Benton* for the

proposition that "a treating physician's opinion who is part of a 'treating team' regardless of how 'low on the continuum of treating physicians . . .' in the treatment team 'would still fall into the treating physician category. [Her] opinion would be entitled to greater weight than that of an examining or reviewing physician." Reply at 1–2, Doc. 25 (quoting *Benton ex re. Benton v. Barnhart*, 331 F.3d 1030, 1038–39 (9th Cir. 2003) (emphasis added)). In *Benton,* however, the treating physician saw the plaintiff once. *Id.* at 1039. Here, by contrast, there is no evidence that Dr. Gursahani ever met with Plaintiff.

Moreover, in *Benton* the record contained "ample evidence" that the physician's evaluation "was largely informed by his continued consultations with Benton's therapist." *Id.* at 1039. Here, by contrast, the record reflects that Plaintiff visited FNP-C Lee on five occasions between July 2015 and March 2018 (AR 331, 329, 327, 343, 375), only four of which were for mental health treatment (all but AR 329), and only two of which fell within the relevant period (AR 342 and 375). Those two visits were nearly two years apart, the second of which post-dated Dr. Gursahani's opinions and therefore could not have formed the basis for Dr. Gursahani's conclusions. Thus, unlike in *Benton*, there is no evidence that Dr. Gursahani's mental MSS opinion was "largely informed by [her] continued consultations with [Plaintiff's] therapist[]." *Benton*, 331 F.3d at 1039. The ALJ appropriately discounted Dr. Gursahani's mental MSS opinion based on her lack of interaction with Plaintiff. See 20 C.F.R. § 416.927(c)(2)(i), (ii) (identifying length, nature and extent of the treatment relationship as relevant factors to consider when weighing treating opinion evidence); *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding the ALJ appropriately discounted a treating physician's report who had no interaction with the claimant.).

Plaintiff also argues that the ALJ impermissibly fragmented her impairments rather than considering their combined effects, and further erred in according undue weight to consultative opinions which did the same. Plaintiff contends that Dr. Gursahani's opinion was the only opinion

that considered the combined effects of her physical and mental impairments and was therefore entitled to controlling weight.

This argument fails for the same reason noted above, namely that the ALJ appropriately discounted Dr. Gurshani's opinion on Plaintiff's mental impairments based on her lack of any interaction with the claimant. This conclusion applies with equal force to Dr. Gursahani's opinion as to how Plaintiff's mental impairments interacted with her physical impairments.

Moreover, consultative and non-examining opinions may constitute substantial evidence when "consistent with independent clinical findings or other evidence in the record," and the ALJ's RFC was supported by all six of those opinions in this case. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). This is no less true in cases involving a combination of physical and mental impairments. Such cases are exceedingly common, and the agency's medical consultants and non-examining physicians routinely (if not exclusively) opine on either a claimant's physical RFC or mental RFC, not on the combined effects of physical and mental impairments.

Finally, Plaintiff contends that Dr. Gursahani's opinion should have been accorded controlling weight because she was fluent in Plaintiff's native language, Hmong, and was therefore in a better position than the consultative examiners to "identify the esoteric inter-relationship between Ms. Vang's psychological and physical impairments in her native language with a common shared cultural experience rather than through a Hmong interpreter at a one-time purely physical or psychological consultative examination . . ." Br. at 16–17. The argument is not persuasive. As noted above, there is no evidence that Plaintiff ever treated directly with Dr. Gursahani. Nor is there any evidence to suggest that the Hmong interpreters were ineffective in translating Plaintiff's statements to the consultative examiners.

The ALJ provided specific and legitimate reasons for rejecting Dr. Gursahani's opinions, namely lack of substantiation in the medical record, no clinical findings or objective signs identified

in support of some limitations, and the apparent lack of direct interaction between Dr. Gursahani and Plaintiff. The ALJ's RFC was further buttressed by all six consultative and non-examining opinions of record for the current application.

### B. Plaintiff's Subjective Complaints

#### 1. Applicable Law

The ALJ is responsible for determining credibility,[2] resolving conflicts in medical testimony and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A claimant's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

An ALJ performs a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *See Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3. First, the claimant must produce objective medical evidence of an impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at 1281–82. If the claimant satisfies the first step and there is no evidence of malingering, the ALJ must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities." S.S.R. 16-3p at 2.

An ALJ's evaluation of a claimant's testimony must be supported by specific, clear and convincing reasons. *Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014); *see also* S.S.R. 16-3p at *10. Subjective pain testimony "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence," but the medical evidence "is still a relevant factor in

---

[2] Social Security Ruling 16-3p applies to disability applications heard by the agency on or after March 28, 2016. Ruling 16-3p eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation is not "an examination of an individual's character" but an endeavor to "determine how symptoms limit ability to perform work-related activities." S.S.R. 16-3p at 1-2.

determining the severity of claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20 C.F.R. § 404.1529(c)(2)).

The ALJ must examine the record as a whole, including objective medical evidence; the claimant's representations of the intensity, persistence and limiting effects of his symptoms; statements and other information from medical providers and other third parties; and, any other relevant evidence included in the individual's administrative record. S.S.R. 16-3p at 5

## 2.  <u>Analysis</u>

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms and found no malingering. AR 29. Thus, the ALJ was required to articulate clear and convincing reasons for rejecting Plaintiff's reported symptoms. *Laborin v. Berryhill*, 867 F.3d 1151, 1155 (9th Cir. 2017). The ALJ did so, finding Plaintiff's allegedly disabling symptoms inconsistent with various medical and non-medical evidence.

The ALJ offered the following summary of her reasoning:

> As for the claimant's statements about the intensity, persistence, and limiting effects of her symptoms, they are inconsistent because there is no evidence the claimant has sought nor received treatment from a mental health specialist, which suggests she is not as disabled as asserted. While the claimant has occasionally indicated she is unable to perform activities around the house, she has also reported completing a wide range of activities of daily living to consultative examiners. These include cooking, cleaning, shopping, and taking care of her personal needs (Exhibits 6F, p. 4; 7F, p. 7). The claimant's allegations are weakened by inconsistencies between the extent of her allegations, and the objective medical evidence. Despite evidence demonstrating the claimant has suffered from medically determinable "severe" impairments, the evidence also demonstrates that the claimant retains the capacity to function adequately and perform many basic activities associated with work.

AR 29.

First, the ALJ noted that Plaintiff had not sought or received treatment from a mental health specialist. Indeed, there is no evidence that she sought or received treatment from a psychologist or a psychiatrist. Plaintiff underscores that her nurse practitioner, FNP-C Lee, had a sub-specialty in psychiatry and prescribed Plaintiff Zoloft and Vistaril for depression anxiety (with some dosage

increases). Plaintiff identifies caselaw suggesting it is inappropriate to characterize such care as conservative. Reply at 5 (quoting *Baker v. Astrue*, No. ED CV 09-1078 RZ, 2010 WL 682263, at *1 (C.D. Cal. Feb. 24, 2010) ("Where mental activity is involved, administering medications that can alter behavior shows anything but conservative treatment")). Plaintiff also contends that she treated at a non-profit clinic for underserved communities (MFHC) because she could not afford specialized care, which is not a legitimate reason to reject her subjective symptomology. Br. at 15–16 (quoting *Treviso v. Berryhill*, 871 F.3d 664 (9th Cir. 2017) ("disability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds.")).

Irrespective of where Plaintiff received care or the credentials of her treating providers, the record reflects four mental health visits overall (AR 331, 327, 343, 375), only two of which occurred during the relevant period and were separated by 21 months (AR 342 and 375). The ALJ found that this course of treatment and Plaintiff's psychotropic medication regimen supported a finding of severe mental impairments and some mental functioning limitations in Plaintiff's RFC (in contrast to the non-examining physicians and the CE, who found no severe mental impairments). The ALJ reasonably concluded, however, that Plaintiff's mental health treatment record did not support a disabling level of mental limitation. *See Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment.").

Next, the ALJ rejected Plaintiff's subjective symptomology as inconsistent with the daily activities she reported to the consultative examiner, including cooking, cleaning, shopping, and taking care of her personal needs. Although these activities did not suggest an exceptional level of functionality, they undermined the existence of disabling limitations. *Valentine v. Commissioner Social Sec. Admin.*, 574 F.3d 685, 693 (9th Cir. 2009) (finding the ALJ satisfied the "clear and convincing" standard for an adverse credibility determination where claimant engaged in

"gardening and community activities" evidence which "suggest[ed] that Valentine's later claims about the severity of his limitations were exaggerated.").

Plaintiff contends that the ALJ's reliance on the CE's examination notes (which was aided by a Hmong interpreter) "rais[e]d a significant issue regarding accuracy of the interpretation of the extent of Ms. Vang's actual daily activities." Br. at 20. Plaintiff then cites her hearing testimony, which she contends contained a more accurate and detailed picture of the true nature of her rather limited daily activities. Plaintiff's argument is not well taken. First, the hearing testimony was also aided by a Hmong interpreter, and is therefore susceptible to the same potential criticism regarding accuracy and detail of the interpretation.

Second, the hearing testimony Plaintiff cites was not internally consistent nor consistent with other evidence in the record. She testified she could do light work around the house for no longer than 5 minutes, but also testified that she cooks for her children and helps them dress and get ready for school. AR 44. Although she did not specify which of her 8 children ages 6 through 18 require help with cooking, dressing, and preparation for school (likely not all of them), these activities are in tension with the notion that she can do light work for no longer than 5 minutes.

She also testified that she was seeing a chiropractor until 2016, but stopped due to lack of insurance coverage. AR 47. However, her chiropractors' final examination notes reflect the following: "Based on the final examination, Mrs. Vang's symptom has resolved. Today, Ms. Vang is released from my care . . ." AR 378.[3]

---

[3] It is worth noting that it was Defendant, not the ALJ, who underscored these inconsistencies in Plaintiff's hearing testimony (and between her hearing testimony and the medical record). As such, had the ALJ's opinion contained no clear and convincing reasons for her adverse credibility determination, remand may well have been warranted. Nevertheless, the Court does not consider this improper post-hoc rationalization of the ALJ's decision by the Commissioner. As stated above, the ALJ properly found Plaintiff's statements to the CE's inconsistent with her reported symptoms. Because Plaintiff argues that her hearing testimony painted a more accurate picture of the limited extent of her daily activities, Defendant appropriately noted the inconsistencies therein and between her hearing testimony and the medical record.

Finally the ALJ appropriately found Plaintiff's subjective symptomology inconsistent with objective medical evidence. Although Plaintiff testified that pain medication provided only temporary relief and that "it's not helping" (AR 46), the medical records suggest otherwise. Three months after her first car accident in February 2015, Plaintiff reported substantial improvement with minimal residual pain in her low back. AR 297, 246–47, 249. Two months after her second car accident in October 2016, Plaintiff reported her pain had improved. AR 377. Plaintiff treated with FNP-C Lee on only one other occasion (March 2018) for acute onset cough, back pain and depression. AR 375. These records undermined the notion that Plaintiff suffered ongoing debilitating back pain.

## C. Consistency of VE Testimony and DOT

### 1. Applicable Law

Pursuant to SSR 00-4p:

> Occupational evidence provided by a VE or VS generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

> Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

### 2. Analysis

Here, the ALJ asked the VE whether any of her answers conflicted with the DOT, and the VE testified that they did not. AR 50. Plaintiff nevertheless contends that a conflict does exist. Specifically, Plaintiff contends that an individual unable to communicate in English and limited to non-complex, routine tasks (limitations identified by the ALJ) would not be able to perform the

jobs identified by the VE which have a language level of L1 and reasoning level of R2 per the DOT. Plaintiff's argument is not persuasive.

As Defendant notes in response, L1 is the lowest language level in the DOT. Non-English speakers are not necessarily precluded from performing L1 jobs. Resp. at 18, Doc. 22 (citing *Pinto v. Massanari*, 249 F.3d 840, 846 & n.4 (9th Cir. 2001); *Charles v. Astrue*, 291 F. App'x 552, 555 (5th Cir. 2008) (unpublished) ("[P]ersons who are functionally illiterate in English can still perform a significant number of unskilled jobs in the national economy."). If non-English speakers were necessarily precluded from performing L1 jobs they would automatically qualify for disability at step 5, which is not a result supported by the Medical-Vocational Guidelines ("Grids"), nor is that result supported by any Social Security ruling, regulation or case law. Indeed, Plaintiff identifies no legal authority to that effect, nor does Plaintiff identify any authority supporting the notion that her limitation to non-complex, routine tasks (in addition to her illiteracy) creates an apparent conflict with the VE's testimony that she could perform L1 jobs.

Second, Plaintiff argues that an individual with her vocational profile cannot perform jobs with a reasoning level of R2. Per the DOT, R2 jobs require an individual to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations."[4] Problematically, Defendant did not address this argument. Nevertheless, existing case law has refuted the notion that individuals limited to non-complex, routine tasks cannot perform R2 jobs, though courts have held that such a limitation is inconsistent with R3 jobs. *See, e.g. Meissl v. Barnhart*, 403 F. Supp. 2d 981 (C.D. Cal. 2005) (finding no conflict between limitation to simple/routine tasks and the VE's identified jobs with a reasoning level of R2); *Lawrence v. Saul*, 941 F.3d 140, 143 (4th Cir. 2019)

---

[4] U.S. Dept. of Labor, Dictionary of Occupational Titles, Revised 4th Edition, 1991, *available at* https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTAPPC

(same); *Kinney v. Berryhill*, No. CV 17-03758 AFM, 2018 WL 1145694, at *3 (C.D. Cal. Jan. 25, 2018) (finding conflict with limitation to simple/routine tasks and jobs with a reasoning level of R3, but no conflict with R2 jobs, and finding harmless error where the VE identified one R3 job and two R2 jobs that the claimant could perform); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015) (holding that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks, and the demands of Level 3 Reasoning").

Plaintiff quotes *Rounds*, in which the Ninth Circuit held that "because the ALJ did not recognize the apparent conflict between Rounds' RFC [one to two step tasks] and the demands of Level Two reasoning, the VE did not address whether the conflict could be resolved. As a result, we 'cannot determine whether substantial evidence supports the ALJ's step-five finding.'" Reply at 9, (quoting *Rounds v. Comm'r of SSA,* 807 F.3d 996, 1003–04 (9th Cir. 2015)).  The paragraph immediately following the one that Plaintiff quotes reveals why *Rounds* is distinguishable: "The ALJ's failure to reconcile this apparent conflict was not harmless. In his RFC assessment, the ALJ did not merely restrict Rounds to 'simple' or 'repetitive' tasks. Instead, he expressly limited her to 'one to two step tasks . . .'" *Rounds*, 807 F.3d at 1004.  Here, by contrast, the ALJ limited Plaintiff to non-complex, routine tasks.[5]  The ALJ did not limit Plaintiff to one to two step tasks.  Thus, *Rounds* establishes no conflict.

Finally, Plaintiff recites the mental status examination findings from a consultative examination, such as her inability to perform basic calculations, remember presidents, explain the difference between an apple and an orange, and interpret a simple proverb.  Reply at 10.  She contends that the ALJ failed to explore with the VE how such an individual could perform the identified jobs with a reasoning level of R2 and a language level of L1.  The argument is not

---

[5] At least one court has noted that a limitation to "Non-complex, routine tasks" is not meaningfully distinct from a limitation to simple and repetitive tasks.  *See Burtenshaw v. Berryhill*, No. 5:16-CV-02243-GJS, 2018 WL 550590, at *4 (C.D. Cal. Jan. 23, 2018).

persuasive.  Plaintiff cited a consultative examination from a prior application.  More importantly, the factual findings on consultative mental status examination are not part of her RFC, nor are they part of her vocational profile at step 5 (age, education and work experience).  The ALJ had no duty to explore those matters with the VE, nor do those mental status examination findings create any apparent conflict with the VE's testimony.

The ALJ posed an appropriate hypothetical to the VE regarding an individual of Plaintiff's age, education and work history who was unable to speak English and who had the specific work-related mental limitations the ALJ found were supported by the record (namely a limitation to non-complex, routine tasks).  The VE testified that such an individual could perform the identified jobs. There was no apparent conflict for the ALJ to explore.

**VIII.  <u>Order</u>**

For the reasons stated above, the Court finds that substantial evidence and applicable law support the ALJ's conclusion that Plaintiff was not disabled.  Accordingly, Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is denied.  The Clerk of Court is directed to enter judgment in favor of Defendant Andrew Saul, Commissioner of Social Security, and against Plaintiff Pa Vang.


IT IS SO ORDERED.

Dated:  __**June 3, 2021**__                    _____**/s/ Gary S. Austin**_____
                                         UNITED STATES MAGISTRATE JUDGE